UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ALEKSEI CHUMAKOV,

               Petitioner,

v.

UNKNOWN PARTY #1, et al.,

               Respondents.
_____/

Case No. 1:26-cv-277

Hon. Hala Y. Jarbou

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will conditionally grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.     Procedural History

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondent to release Petitioner or, alternatively, order a prompt review of Petitioner's detention before an Immigration Judge. (Pet., ECF No. 1, PageID.3.) In an order entered on January 28, 2026, the Court directed Respondent to show cause, within three business days, why the writ of habeas corpus or other relief requested by Petitioner should not be granted. (Order, ECF No. 4.)

Respondent filed his response on February 2, 2026, (ECF No. 6), and Petitioner filed his reply on February 17, 2026, (ECF No. 8).

## II.      Factual Background

Petitioner is a native and citizen of Russia. (Pet., ECF No. 1, PageID.2; Notice and Order of Expedited Removal (NOER), ECF No. 6-1, PageID.34.) On January 17, 2022, Petitioner applied for admission into the United States from Mexico at the Otay Mesa Port of Entry. (NOER, ECF No. 6-1, PageID.34.) On January 18, 2022, a Customs and Border Protection (CBP) officer issued Petitioner a Notice and Order of Expedited Removal charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA) because Petitioner was an immigrant "who, at the time of application for admission, [was] not in possession of a valid unexpired [immigration or travel document]." (*Id.*) On January 23, 2022, CBP transferred custody of Petitioner to ERO Adams County Correctional Center. (Record of Deportable/Inadmissible Alien, ECF No. 6-2, PageID.39.) On February 19, 2022, Petitioner was released from custody on his own recognizance (*Id.*, Order of Release on Recognizance (ORR), ECF No. 1-1, PageID.10–14), pending resolution of Petitioner's application for asylum and for withholding of removal (Record of Deportable/Inadmissible Alien, ECF No. 6-2, PageID.39).

On June 25, 2025, the United States Citizenship and Immigration Services dismissed Petitioner's application for asylum and for withholding of removal. (*Id.*, PageID.40). The parties do not explain the reason for dismissal. On October 30, 2025, Enforcement and Removal Operations officers arrested Petitioner as part of Operation Midway Blitz. (*Id.*, PageID.38.) At that time, Deportation Officer J. Leon completed the Form I-213, Record of Deportable/Inadmissible Alien. (*Id.*, PageID.39.) ICE detained Petitioner "pending [a] Custody Redetermination for credible fear interview." (*Id.*, PageID.40.) On December 29, 2025, an asylum officer determined that Petitioner "[had] not established a credible fear of persecution in [his] country." (Record of

2

Negative Credible Fear Determination, ECF No. 64, PageID.48.) Petitioner requested Immigration Judge review of that decision. (*Id*., PageID.49.) Petitioner indicates that the review has already occurred, but without adequate notice.[1] (Pet'r's Reply, ECF No. 8, PageID.56–57.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Statutory Basis for Petitioner's Detention

Petitioner contends that the Department of Homeland Security (DHS) has violated the INA by concluding that Petitioner can be detained and removed without review by an Immigration Judge pursuant to the mandatory detention provisions set forth in 8 U.S.C. § 1225(b)(1). Respondent, however, contends that Petitioner fits within the terms of § 1225(b)(1) and that Petitioner is subject to the 2022 Order of Expedited Removal, which provides for expedited removal and mandatory detention under § 1225(b)(1). The Court concludes that 8 U.S.C. § 1226(a) and not 8 U.S.C. § 1225(b) governs Respondents' detention of Petitioner.

---

[1] Petitioner's assertion is bolstered by the Notice of Referral to Immigration Judge submitted by Respondent (ECF No. 6-5). That notice leaves the date and time of the hearing blank. (*Id*.)

3

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the United States Supreme Court described

the interplay between these contiguous sections of the INA. With regard to § 1225, the Court

stated:

> To implement its immigration policy, the Government must be able to decide
> (1) who may enter the country and (2) who may stay here after entering.
>
> That process of decision generally begins at the Nation's borders and ports of entry,
> where the Government must determine whether an alien seeking to enter the
> country is admissible. Under § 302, 110 Stat. 3009–579, 8 U.S.C. § 1225, an alien
> who "arrives in the United States," or "is present" in this country but "has not been
> admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for
> admission must "be inspected by immigration officers" to ensure that they may be
> admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those
> covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1)
> applies to aliens initially determined to be inadmissible due to fraud,
> misrepresentation, or lack of valid documentation. See § 1225(b)(1)(A)(i) (citing
> §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens
> designated by the Attorney General in his discretion. See § 1225(b)(1)(A)(iii).
> Section 1225(b)(2) is broader. It serves as a catchall provision that applies to all
> applicants for admission not covered by § 1225(b)(1) (with specific exceptions not
> relevant here). See §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens
> covered by § 1225(b)(1) are normally ordered removed "without further hearing or
> review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a
> § 1225(b)(1) alien "indicates either an intention to apply for asylum . . . or a fear of
> persecution," then that alien is referred for an asylum interview.
> § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that
> the alien has a credible fear of persecution, "the alien shall be detained for further
> consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are
> instead covered by § 1225(b)(2) are detained pursuant to a different process. Those
> aliens "shall be detained for a [removal] proceeding" if an immigration officer
> "determines that [they are] not clearly and beyond a doubt entitled to be admitted"
> into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for
> admission may be temporarily released on parole "for urgent humanitarian reasons
> or significant public benefit." § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3
> (2017). Such parole, however, "shall not be regarded as an admission of the alien."
> 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served,
> "the alien shall forthwith return or be returned to the custody from which he was

paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid*.

*Jennings*, 583 U.S. at 286–88.

When Petitioner arrived here in January 2022, DHS put him in the 1225(b)(1) category and ordered his removal. (NOER, ECF No. 6-1, PageID.34.) DHS then transferred him to a detention facility. At that point, per *Jennings*, under § 1225, DHS could have continued to detain Petitioner or they could have released Petitioner under § 1182(d)(5)(A) "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting § 1182(d)(5)(A)).

DHS chose a different path. In February 2022, DHS released Petitioner on his own recognizance under 8 U.S.C. § 1226. (ORR, ECF No. 6-3, PageID.42 ("You have been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act[, codified at 8 U.S.C. 1226,] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following provisions . . . .").) The *Jennings* court explained that path as follows:

> Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more . . . classes of deportable aliens." § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission. See §§ 1227(a)(1), (2).
>
> Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal. As relevant here, § 1226 distinguishes between two different categories of aliens. Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on . . . bond" or "conditional parole." *Ibid*.

*   *   *

> In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also

5

authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).[2]

*Jennings*, 583 U.S. at 288–89. (footnote omitted).

DHS, therefore, abandoned the § 1225 path—the path that permits release only under 8 U.S.C. § 1182(d)(5)(A)[3]—in favor of the § 1226 path—the path that permits release "on . . . bond of at least $1,500 . . . or . . . conditional parole . . .," 8 U.S.C. § 1226(a).[4] That choice had consequences. First, DHS's assertion that its present detention of Petitioner (after his 2025 arrest) falls under § 1225 is contradicted by its own prior decision to apply § 1226 to him. *See Sidqui v. Almodovar*, 25-CV-9349 (VSB), 2026 WL 251929, at *10 (S.D.N.Y. Jan. 30, 2026) (collecting cases concluding that release on bond or conditional parole under § 1226(a) forecloses subsequent mandatory detention or expedited removal under § 1225). Because DHS chose to release Petitioner under § 1226(a), it necessarily follows that Petitioner is not subject to mandatory detention under § 1225.

---

[2] Respondents do not contend Petitioner has been convicted of any crime listed under 8 U.S.C. § 1227(a)(2)(A) so as to implicate 8 U.S.C. § 1226(c) regarding the detention of "criminal aliens."

[3] "Section 1182(d)(5)(A) allows deserving aliens who might not otherwise be admissible to come 'into the United States' on a temporary basis. The scope of § 1182(d)(5)(A) is carefully circumscribed: Aliens may be paroled into the United States 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit.' 8 U.S.C. § 1182(d)(5)(A). The provision focuses principally on aliens who arrive and present themselves to immigration officials at a designated port of entry." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007).

[4] "By contrast, § 1226(a) focuses principally on aliens who are present in the United States but were not lawfully admitted or who were lawfully admitted but have become subject to removal. Section 1226(a) simply provides that, when an alien is "arrested and detained," immigration officials have the option of releasing the alien from custody on bond or conditional parole pending a final removal decision. The provision does not restrict conditional parole to cases involving 'urgent humanitarian reasons or significant public benefit.' *Cf. Reno v. Flores*, 507 U.S. 292, 294–95, (1993) ( 'Congress has given the Attorney General broad discretion to determine whether, and on what terms, an alien arrested on suspicion of being deportable should be released pending the deportation hearing.')." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1119 (9th Cir. 2007) (parallel citations omitted).

6

Second, noncitizens who are released under § 1226, like Petitioner, have entered the country and are present here. *See, e.g.*, *Ye v. Maldonado*, No. 25-cv-6417 (AMD), 2025 WL 3521298, at *6 (E.D.N.Y. Dec. 8, 2025) (quoting *Zadvydas*, 533 U.S. at 693, and stating that "[h]ere, the petitioner was released on recognizance from domestic detention, not paroled, and then arrested inside the United States (ECF No. 8-1 ¶ 3), '[a]nd that ma[kes] all the difference.'"). This Court has routinely concluded that § 1226(a), not § 1225(b), governs noncitizens who have resided in the United States and were already within the United States when apprehended and arrested. *See, e.g.*, *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *3–6 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *4–6 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *4–7 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *3–6 (W.D. Mich. Dec. 12, 2025).[5] Thus, because Petitioner was present in the United States when DHS re-arrested him in 2025, he is now subject to detention under § 1226(a), which entitles him to a custody redetermination.

## V.    Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Due Process Clause. Respondents counter Petitioner's arguments by stating that Petitioner has received all of the process due to him under § 1225(b). The Court concludes that Petitioner's current detention under the mandatory detention framework set forth in § 1225(b) violates Petitioner's Fifth Amendment due process rights for the reasons set forth in the Court's constitutional analysis in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *6–8 (W.D. Mich. Dec. 12,

---

[5] The Court is aware of *Buenrostro-Mendez v. Bondi*, No. 25-20496, --- F.4th ----, 2026 WL 323330 (5th Cir. Feb. 6, 2026), which was recently issued by the United States Court of Appeals for the Fifth Circuit. At this time, this non-binding case does not change the Court's analysis.

7

2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *7–8 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *7–9 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *6–8 (W.D. Mich. Dec. 12, 2025).

**VI.    Other Claims and Other Forms of Relief**

Because the Court will conditionally grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

**Conclusion**

For the reasons discussed above, the Court will enter a judgment conditionally granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondent to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within five business days of the date of this Court's opinion and judgment with notice to the Parties as soon as practicable, no later than 24 hours prior to the scheduled hearing, or, in the alternative, immediately release Petitioner from custody. The Court will also order Respondent to file a status report within six business days of the date of this Court's opinion and judgment to certify compliance with this opinion and the corresponding judgment. The status report shall include if and when the bond hearing occurred, if bond was granted or denied, and if bond was granted, the conditions of the bond, or if bond was denied, the reasons for the denial.

Moreover, the Court will issue a declaratory judgment that Petitioner may not be detained under the provisions of § 1225(b); instead, absent a material change in circumstances, Petitioner may only be detained under § 1226(a). Finally, to ensure that this Court's orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will add United States Secretary of Homeland Security Kristi Noem as a respondent. *See Antele Cobix v. Raycraft*, No. 1:25-cv-

8

1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025) (explaining that Secretary Noem is

a proper respondent to avoid loss of jurisdiction).


Dated: February 26, 2026                        /s/ Hala Y. Jarbou

HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE